THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Case No. 1-22-cr-192-MSN |
| MATTHEW D. ROGERS | ) ) ) ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

### I.     INTRODUCTION

Matthew Rogers, by and through undersigned counsel, respectfully files this Memorandum in Aid of Sentencing. Mr. Rogers comes before this Court humbled and extraordinarily remorseful for his actions which have brought him before it upon accepting responsibility and entering a plea of guilty to one (1) count of Unlawful Transfer or Possession of a Machinegun, in violation of 18 U.S.C. § 922(o) and 924(a)(2). *See generally* PSR. Mr. Rogers deeply regrets the choices he made that have brought him before this Court.

*Sentencing Request*

Based upon Mr. Rogers's personal history and characteristics, the nature and circumstances of the offense, and the unlikelihood of recidivism, Mr. Rogers respectfully requests that the Court impose a sentence of probation. Such a sentence would be "sufficient, but not greater than necessary," to achieve the legitimate purposes of sentencing. 18 U.S.C. § 3553(a).

### II.     MR. ROGERS'S BACKGROUND

Mr. Rogers was born on July 1, 1998 in Lancaster, California, to his parents Michael and Judy Rogers, and has one younger brother and two paternal half-brothers. *See* PSR at ¶ 83.

Mr. Rogers was raised in a military family and moved around quite a bit when he was younger. *Id*. at ¶ 84 and 86. His parents both served in the United States Air Force and it was always his dream to enter the armed forces. *Id*. Unfortunately, his involvement in this case will likely prevent him from being able to follow in his parents' footsteps, unless he is able to obtain an enlistment conduct waiver. Although Mr. Rogers' parents divorced when he was in the fourth grade, he maintained good relationships with them, and they remain supportive regardless of his current situation. *Id*. Mr. Rogers struggled in school growing up but earned his GED and attended George Mason University for a semester in 2017. *Id*. at ¶¶ 92-95. One of Mr. Rogers' goals is to eventually re-enroll and complete a bachelor's degree. What is evident from Mr. Roger's background is that he has always been a hard worker. *Id*. at ¶¶ 96 – 101. His long history of employment goes back to high school, and he has held a variety of jobs in construction, administrative roles, and most recently in hospitality management. *Id*. Another important part of Mr. Rogers' background that is crucial for the Court to consider is his level of immaturity at the time of the offense, and his struggles with mental health. *Id*. at ¶ 89. Luckily, Mr. Rogers has a good familial support system in place, sought out the help he desperately needed, and is in a much better place as he stands before the Court facing sentencing. *Id*.

### III.     THE LEGAL FRAMEWORK OF AN ADVISORY GUIDELINE RANGE

While this Court must still correctly calculate the guideline range, *see Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *see id.* at 51; *see also Nelson v. United States*, 555 U.S. 350, 352 (2009), but as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," *Gall*, 552 U.S. at 49-50, "make an individualized assessment based on the facts presented," *id.*, and explain how the

facts relate to the purposes of sentencing. *Id*. at 53-60; *see also Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101; *Pepper*, 131 S. Ct. at 1242-43.

In order to ensure that the guidelines are truly advisory and constitutional, this Court has the authority to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . ., as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007) (holding that district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

Additionally, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper* 131 S. Ct. at 1240 (citing *Wasman v. United States*, 468 U. S. 559, 564 (1984)).

In this regard, "the district court's job is not [even] to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644, n.1 (6th Cir. 2006). Accordingly, "if a district court were explicitly to conclude that two sentences

equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006).

### IV. THE APPLICABLE U.S. SENTENCING GUIDELINES RANGE

According to the plea agreement in this matter, the parties agree that the following Sentencing Guidelines sections apply:

| | |
|---|---:|
| U.S.S.G. §§ 2K2.1 – Base Offense Level | 18 |
| U.S.S.G. §3E1.1(a) – Acceptance of Responsibility | -2 |
| U.S.S.G. §3E1.1(b) – Acceptance of Responsibility | -1 |
| **TOTAL OFFENSE LEVEL** | **15** |

Mr. Rogers has a criminal history score of zero (0); he, therefore, has a criminal history category of I for sentencing purposes. *See* PSR at ¶ 78. Mr. Rogers's total offense level of fifteen (15) combined with a criminal history category of I produces a Guidelines' range of eighteen (18) to twenty-four (24) months of incarceration. *See* PSR at ¶ 105 and Sentencing Guidelines Table.

### V. 18 U.S.C. § 3553(a) FACTORS

As the Court is well aware, the Sentencing Guidelines are not mandatory, and while the Court must consult the Guidelines and take them into account at sentencing, *see United States v. Booker*, 125 S. Ct. 738, 767 (2005), Section 3553(a)(1) provides a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall*, 552 U.S. at 50 n. 6. The command is consistent with the Supreme Court's observation that "the punishment should fit the offender and not merely the crime." *Pepper*, 131 S. Ct. at 1240 (citing *Williams v. New York*, 337 U.S. 241, 247 (1949)). It is similarly consistent with Congress' express directive that "[n]o limitation shall be placed on the information" a sentencing court may

consider "concerning the [defendant's] background, character, and conduct." *Id.* (citing 18 U.S.C. § 3661).

### A. The Nature and Circumstances of the Offense.

Mr. Rogers letter to the Court tells the story of a young man who struggled with direction, discipline, and maturity in life, despite his relatively stable and loving family environment. *See* Exhibit A. He makes no excuses for his conduct and explains that he is "not exactly sure how to put into words just how much [he] regrets the actions [he] had taken." *Id*. He understands what he did was a "conscious decision to break the law for the fact of 'oh that'd be cool." *Id*. What these words show to the Court are the immaturity and insecurity in who he was and where he was going in life. Mr. Rogers allowed the adversity of academic performance, the military application process, and other life challenges to thrust him into a mindset of almost whimsical juvenility. And unfortunately, it has cost Mr. Rogers tremendously in terms of collateral consequences. Mr. Rogers will forever be a convicted felon for a firearms offense, and his lifelong dream of entering the miliary is essentially squandered.

Mr. Rogers knows how his actions have affected those around him, particularly his mother. He tells the Court how his mother "has been a rock in [his] life," and how much he respects what she has overcome and accomplished in her life. *Id*. Mr. Rogers always believed that no matter how much of a "punk" he was in his younger years, he knew his mother was proud of him. *Id*. However, "that changed on May 20, 2022," which was the day the search warrant was executed in this case. *Id*. The "look of disappointment" on his mother's face is forever etched in Mr. Rogers' memory, and he is learning to forgive himself and is in awe of his mother's love and support for him through the entirety of this case. *Id*.

Mr. Rogers understands well the nature of his misconduct, and that it was a "small string of bad choices" that led him here. He failed to appreciate the gravity of the situation in which he was getting involved, but is confident in his steadfast commitment to better himself and continue being a productive member of society.

### B. Mr. Rogers's Personal History and Characteristics.

Mr. Rogers submits four (4) letters of support on his behalf for the Court to consider. The most powerful letter comes not surprisingly from Mr. Rogers' mother, Judy Rogers. *See* Exhibit B. Ms. Rogers provides the Court with a complete picture of who Mr. Rogers is and why the Court should impose a sentence of probation in this case. *Id*. Ms. Rogers knows her son only like a loving mother can – and she knows her son is a good person who made a terrible decision – but is someone who has tremendous potential and will never break the law again. *Id*. She provides the Court with a snapshot of Mr. Rogers' struggles in school because of ADHD, and of moving throughout their younger years due to military service. *Id*. She has always tried to do right by her son, teaching him respect, discipline, and kindness, and believes those qualities are woven into Mr. Rogers' character – a character that is completely at odds with the conduct of this offense. *Id*.

Ms. Rogers tells the Court many stories of Mr. Rogers' kindness, light-hearted nature, and willingness to help anyone in need, whether it be an elderly woman with her groceries or injured animals on the side of the road. *Id*. Mr. Rogers desire to serve others does not stop there. There were two occasions when car accidents occurred near Mr. Rogers' home, and he was right there to assist both times. *Id*. One was when a two-year old girl was pinned by her seatbelt in an upside-down car that had crashed; and the other was when a van with flammable explosives was pushed over a curb onto a fire hydrant. *Id*. Mr. Rogers helped keep the toddler reassured and calm as rescue services arrived, and he showed up to Court to assist the prosecution in the case involving the

crashed van. *Id*. This motivated Mr. Rogers to volunteer at the local fire and rescue station until COVID ended the program because trainees were no longer allowed to participate in live calls. *Id*. Another example of Mr. Rogers' kindness was when a friend's brother committed suicide, and Mr. Rogers would be present for his friend's family, who were "very appreciative of Matthew's presence and compassion." *Id*. Mr. Rogers is also a devoted grandson, driving south of Richmond on many occasions just to take his grandfather to breakfast and spend time with him. *Id*.

Time and time again, Mr. Rogers is a man who "demonstrates selfless acts of kindness," and has an "innate drive to do the right thing even when no one is looking." *Id*. Ms. Rogers began her letter describing how terrifying and harrowing the experience of the FBI guns drawn conducting the search warrant in her home was for her. *Id*. That experience forever scarred her and Mr. Rogers has not stopped apologizing for his actions since. *Id*. "Matthew still hugs me and apologizes for his poor decisions and the consequences that affected our family on 20 May 2022 and continued causing irreparable post-traumatic stress." *Id*. "He beats himself up every day not knowing what his future holds," she writes. *Id*. Ms. Rogers knows her son is "not a criminal" and she begs the Court for leniency in his sentencing because prison is not the answer here, and because she desperately wants to see her son have the opportunity to "seek an enlistment conduct waiver and serve in the Army honorably." *Id*.

Retired Chief Petty Officer George Taplin and his daughter Kelly Taplin both speak highly of Mr. Rogers. *See* Exhibit C and D, respectively. Mr. Taplin came to know Mr. Rogers over the last four years as his daughter, Kelly and Mr. Rogers started a small business together centered around horses. *See* Exhibit C. Mr. Taplin has witnessed firsthand how hard of a worker Mr. Rogers is, observing "him working at various horse boarding facilities repairing buildings, feeding and exercising the horses … AFTER he had worked his regular job." *Id*. Mr. Taplin believes Mr.

7

Rogers is an "industrious young man" and was "appalled when [he] heard about the arrest." *Id*. Mr. Rogers has directly and "consistently expressed remorse for letting down those who support him, and has told me personally that nothing like this will ever happen again … I believe him." *Id*. Mr. Kaplin understands that "young people do make mistakes" but he remains in Mr. Rogers corner and believes he will make the right choices in the future. *Id*.

Kelly Taplin is Mr. Rogers' girlfriend; they have dated for the last 5 years, but she has known Mr. Rogers for the last ten (10) years since they were in the same friend group in high school. *See* Exhibit D. She describes Mr. Rogers as "the most kind, thoughtful person [she] knows," and began dating him because he "was well regarded for his integrity and honesty." *Id*. She tells the Court that because she has a personal relationship with Mr. Rogers, she is especially knowledgeable about not only his remorse, but how this "lapse in judgment … is not a definition of his true character." *Id*. She admires Mr. Rogers for his selflessness, his kindness, and his love – towards strangers, towards his family, and towards animals. *Id*. Ms. Kaplin knows that Mr. Rogers is a good man and she prays this Court sees past just the conduct in this case to the true nature of Mr. Rogers' character. *Id*.

Robert Brunngraber, a retired CIA officer and close family friend, also writes a letter on behalf of Mr. Rogers. *See* Exhibit E. He has known Mr. Rogers since he was seven (7) years old, and tells the Court of the overall theme of naivety and juvenility that surrounds Mr. Rogers. *Id*. He tells the Court how Mr. Rogers would try to show off a little too much to his friends at school growing up, always seeming to try to fill a void – something Mr. Brunngraber attributes to his father being less present after the divorce and multiple deployments. *Id*. So unfortunately, when Mr. Brunngraber heard of Mr. Rogers' arrest, it was "not a complete surprise," because "[he] [is] sure he thought it was 'cool' to try them [auto sears] out in his non-automatic AR-15." *Id*. Mr.

8

Brunngraber also points out how he is "completely sure that he [Mr. Rogers] would never have any intent to use the weapon to harm anyone." *Id*. He is proud of Mr. Rogers "compassion" and commitment to helping his community, and prays this Court issues a serious but lenient sentence that allows Mr. Rogers to seek an "enlistment conduct waiver" and still pursue his dream of entering the military. *Id*.

### C. Mr. Rogers Poses Little Risk of Recidivism.

Of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is one of great practical concern and is the most capable of being measured. Fortunately, Mr. Rogers does not fit the archetype of a person who will commit new criminal offenses or recidivate. And, because of the reinvigorated role of the judiciary in sentencing, judges can now impose sentences that take such research into consideration to more effectively impose sufficient, but not greater than necessary, sentences.

The judiciary's bolstered role is especially important given the Commission's own findings that "there is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected as the Guidelines' offense level has long been recognized as "[n]ot intended or designed to predict recidivism." *U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 15 (May 2004) (hereinafter *Measuring Recidivism*). Thus, the Guidelines are at odds with 18 U.S.C. § 3553(a)(2)(C). Accordingly, *Booker* has freed the judiciary to remedy this inconsistency.

In addition to what has already been described about Mr. Rogers' character demonstrating his ability to reform and not recidivate, the Commission has also objectively quantified his low likelihood of recidivism. In fact, only 3.5% of first offenders with zero criminal history points are

9

ever reconvicted. *U.S Sentencing Comm'n, Recidivism and the First Offender* at Exhibit 6 (May of 2004) (hereinafter *First Offender*). Only 11.7% of all first offenders ever find themselves back in the criminal justice system (defined as reconviction, re-arrest, or revocation). *First Offender* at Exhibit 6. This is Mr. Rogers' only criminal conviction, and the experience taught him a valuable life lesson to ensure he does not repeat the mistakes of the past. There is, quite simply, nothing in the record to make this Court reasonably believe that Mr. Rogers would commit any criminal offense in the future.

It is unfortunate that the Guidelines' offense levels do not take into consideration such data. This data exists yet is not utilized to inform the Commission's rulemaking. However, without even considering the circumstances of the offense, it is apparent that Mr. Rogers is not a person who is statistically likely to recidivate. And, when one considers such statistics in light of Mr. Rogers' history, employment, community involvement, and support system, it is safe to assume that he will never again be arrested or charged with an offense.

## VI.   CONCLUSION

In light of the above, Mr. Rogers, by and through undersigned counsel, respectfully requests that the Court impose a sentence of probation.

Respectfully submitted,

_____/s/_____
David Benowitz
VSB# 91194
*Counsel for Matthew Rogers*
Price Benowitz LLP
409 7th Street, NW, Suite 200
Washington, DC 20004
O: (202) 417-6000
M: (202) 271-5249
F: (202) 664-1331
David@PriceBenowitz.com

10

## **CERTIFICATION**

    I HEREBY CERTIFY that on this 30th day of March 2023, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via CM/ECF to all parties.

                                                _____/s/_____
                                                David Benowitz