IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:22-CR-192 |
| v. ) | |
| ) | The Honorable Michael S. Nachmanoff |
| MATTHEW D. ROGERS, ) | |
| ) | Sentencing: April 6, 2023 |
| Defendant. ) | |

## GOVERNMENT'S POSITION ON SENTENCING

The defendant, Matthew D. Rogers, comes before the Court for sentencing after pleading guilty to unlawfully possessing a machinegun. Specifically, the defendant has admitted that, in May 2020, he fashioned a homemade machinegun-conversion part out of a coat hanger. A few days later, he purchased four machinegun-conversion parts from a seller on Facebook. The defendant knew that the parts were illegal and that it was a felony to possess them. Yet he possessed them anyway and, in fact, transferred one of the parts to another individual. He attempted to sell his rifle with a machinegun-conversion part to others, touting that it was a fully automatic, unregistered short-barrel rifle. When law enforcement agents searched his home in May 2022, they seized two machinegun-conversion parts and an upper receiver used to convert the defendant's AR rifle into an unregistered short-barrel rifle.

As just punishment for the offense, the Government recommends that the Court sentence the defendant to a term of imprisonment of 18 months. As properly calculated in the Presentence Investigation Report (PSR), the Sentencing Guidelines advise that the Court sentence the defendant to 18 to 24 months of imprisonment. The recommended sentence is at the lowest end of that range.

A guidelines sentence is appropriate in this case.  The defendant flaunted the law by possessing the machinegun-conversion parts when he knew that they were illegal.  And he displayed an indifference to the dangers posed by such parts when he transferred and attempted to sell one or more of the machinegun-conversion parts.  Given the increased proliferation of these dangerous parts over the last few years, a guidelines sentence is necessary to afford adequate deterrence.

Yet there are mitigating circumstances that support a sentence at the lowest end of the guidelines range.  The evidence suggests that, even before his arrest, the 24-year-old defendant had moved past the influences that played a role in his purchase of the machinegun-conversion parts.  And the defendant, who has no criminal history, promptly accepted responsibility.  Under these circumstances, the government suggests that a term of imprisonment of 18 months—the lowest end of the guidelines range—is appropriate.

## BACKGROUND

Subject to limited exceptions,[1] it is "unlawful for any person to transfer or possess a machinegun."  18 U.S.C. § 922(o)(1).  "The term 'machinegun' has the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))."  *Id.* § 921(a)(24).  Under the National Firearms Act, "[t]he term 'machinegun' means any weapon which shoots, is

---

[1] The prohibition against transferring or possessing a machinegun does not apply to the following:

> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

18 U.S.C. § 922(o)(2).  Neither of these exceptions applies here.

2

designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b).

Of particular relevance here, the National Firearms Act further defines "machinegun" to include the following categories of parts:

> the frame or receiver of any such weapon, *any part designed and intended solely and exclusively*, or combination of parts designed and intended, *for use in converting a weapon into a machinegun*, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

*Id.* (emphasis added). As the Fourth Circuit has explained, this provision "reflects a purpose to include three separate and individually sufficient categories of weapons within the definition of a machinegun: (1) a frame or receiver; (2) conversion parts; and (3) combination parts from which a machinegun can be assembled." *United States v. Williams*, 364 F.3d 556, 558 (4th Cir. 2004).

### A. Offense Conduct

Around May 23, 2020, the defendant made a homemade machinegun-conversion part[2] out of a coat hanger. *See* Statement of Facts ¶ 4 (Dec. 15, 2022) (Dkt. No. 29) (hereinafter, "SOF"). The next day, he sent a text message to another individual, "K.T.," stating that the machinegun-conversion part "work[ed]" and made his AR rifle "full auto." *Id.* ¶ 5. The defendant owned a Bushmaster Firearms International, model XM15-E2S, 300 AAC Blackout caliber, AR-type firearm (hereinafter, the "AR Rifle"). *Id.* ¶ 8.

Four days later, over Facebook, the defendant reached out to a seller in New York about purchasing machinegun-conversion parts. *Id.* ¶ 6. Using coded language to discuss the sale, the defendant purchased four machinegun-conversion parts for $20. *Id.* The seller shipped the

---

[2] The defendant has admitted that the machinegun-conversion parts that he possessed were "designed and intended solely and exclusively for use in converting a firearm into a weapon that shoots automatically more than one shot, without manual reloading, by a single function of the trigger" (i.e., a machinegun). SOF ¶ 2.

machinegun-conversion parts to the defendant, who received them at his home in the Eastern District of Virginia by June 10, 2020. *See id.*

In addition to possessing the machinegun-conversion parts, the defendant possessed an unregistered short-barrel rifle. *See id.* ¶ 9. Under the National Firearms Act, short-barrel rifles—a rifle having a barrel less than 16 inches in length—cannot be possessed unless registered to the possessor in the National Firearms Registration and Transfer Record (NFRTR). *See* 26 U.S.C. §§ 5845(a)(3), 5861(d). Specifically, the defendant owned an AR-type, 5.56mm NATO caliber upper receiver that, when attached to his AR Rifle, made the barrel of the AR Rifle less than 16 inches in length. *See* SOF ¶ 9. This upper receiver is hereafter referred to as the "Short Barrel." The evidence shows that, at times, the defendant would attach the Short Barrel to the AR Rifle, thereby possessing a short-barrel rifle. *See id.* (describing how the defendant sent a picture of the AR Rifle with the Short Barrel attached). A short-barrel rifle was never registered to the defendant in the NFRTR. *See id.* ¶ 16.

The defendant's conduct extends beyond just possessing these illegal parts for his own use. As the defendant has admitted, he gave one of the machinegun-conversion parts that he purchased online to K.T. *See* SOF ¶ 7. He later took back the part in late 2021 or early 2022. *Id.*

The defendant also tried to sell the AR Rifle with a machinegun-conversion part and the Short Barrel, knowing that it was illegal. For example, in August 2020, the defendant tried to sell the AR Rifle, with the machinegun-conversion part and Short Barrel, over Facebook to a user with the initials "E.A." *Id.* ¶ 9. He sent a picture of the AR Rifle with the Short Barrel attached and the machinegun-conversion part depicted. *See id.* The defendant told E.A. that the

AR Rifle was "full auto" and that he could not sell it at a gun show because it was "illegal for 3 reasons lmao [laughing my ass off]." *Id.*

Also in August 2020, the defendant offered to sell the AR Rifle to another individual, "E.L.," for $1500 in cash. *Id.* ¶ 10. In a text message to E.L., the defendant said to "[k]eep it [down low] because its [sic] a felony if i we [sic] get caught with it." *Id.* The defendant informed E.L. that the AR Rifle was an "[u]nregistered full auto SBR," meaning that it was a fully automatic, short-barrel rifle not registered in the NFRTR. *Id.*

Almost five months later, in early January 2021, the defendant contacted a Facebook user, "H.M.," about trading the AR Rifle for a pickup truck. *See id.* ¶ 11. The defendant sent H.M. a photograph of the AR Rifle with the Short Barrel attached. *Id.* The defendant told H.M. that the AR Rifle was "auto," meaning fully automatic. *See id.*

The defendant engaged in this conduct knowing full well that the machinegun-conversion parts and short-barrel rifle were illegal. In addition to the above-described statements that he made to prospective purchasers of the AR Rifle, he created the following image on his computer on January 27, 2021:



*Id.* ¶ 12. The defendant had edited the photograph to denote which parts he understood to be illegal, with "Felony 1" pointing to the machinegun-conversion part and "Felony 2" pointing to the Short Barrel. *Id.* ¶ 13.

Law enforcement agents conducted a lawful search of the defendant's home on May 20, 2022. *See id.* ¶ 15. In the course of the search, the agents seized two machinegun-conversion parts (one made from wire, and the other made from polymer material by additive manufacturing),[3] the AR Rifle, and the Short Barrel. *See id.* A law enforcement officer installed the two machinegun-conversion parts into the AR Rifle, and both parts converted the AR Rifle into a machinegun. *Id.* Another law enforcement agent affixed the Short Barrel to the AR Rifle and measured the length of the barrel from the bolt face to the end of the muzzle break as approximately 11.75 inches. *Id.*

### B. Procedural History

On August 3, 2022, the government charged the defendant by criminal complaint with a single count of unlawful transfer or possession of a machinegun, in violation of Title 18, U.S. Code, § 922(o). *See* Criminal Compl. (Aug. 3, 2022) (Dkt. No. 1). The next day, the defendant was arrested and made his initial appearance. *See* Minute Entry (Aug. 4, 2022) (Dkt. No. 12). The government did not seek detention, and the defendant was released on a personal recognizance bond with conditions of release. *See id.* The defendant subsequently waived his right to a preliminary hearing. *See* Minute Entry (Aug. 9, 2022) (Dkt. No. 16).

---

[3] In a pre-arrest interview, the defendant told law enforcement agents that one of the machinegun-conversion parts that the agents seized was the part that he had given to K.T. and taken back. *See* Aff. in Support of Criminal Compl. ¶ 63 (Aug. 3, 2022) (Dkt. No. 2) (hereinafter, "Aff."). When asked what he did with the other three machinegun-conversion parts that he purchased from the seller on Facebook, the defendant stated that they broke and he threw them away. *Id.* ¶ 24.

On December 15, 2022, the defendant appeared before the Court for a change-of-plea hearing. The defendant waived his right to indictment, and pursuant to a written plea agreement, he pleaded guilty to a single-count criminal information charging him with unlawful possession of a machinegun, in violation of Title 18, U.S. Code, § 922(o). *See* Criminal Information (Dec. 15, 2022) (Dkt. No. 26); Plea Agreement (Dec. 15, 2022) (Dkt. No. 28). The Court scheduled the defendant's sentencing hearing for April 6, 2023. *See* Minute Entry (Dec. 15, 2022) (Dkt. No. 27).

## DISCUSSION

In light of his guilty plea, the defendant stands convicted of a single count of unlawful possession of a machinegun. *See* 18 U.S.C. § 922(o). This offense carries a maximum term of imprisonment of ten years. *See id.* § 924(a)(2). It also carries a maximum fine of $250,000, *see id.* § 3571(b)(3), and a maximum supervised release term of three years, *see id.* § 3583(b)(2).

In imposing a sentence within the statutory range, the Court must consider the factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(a). These factors require the Court to consider the Sentencing Guidelines, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *Id.* § 3553(a)(1), (4)-(6). The sentence should be "sufficient, but not greater than necessary," to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, protect the public from further crimes of the defendant, afford adequate deterrence to criminal conduct, and provide the defendant with necessary training and treatment. *Id.* § 3553(a)(2). Considering all the factors under § 3553(a), the Court must make an "individualized assessment

based on the facts presented" to determine the appropriate sentence. *United States v. Abed*, 3 F.4th 104, 118 (4th Cir. 2021) (quoting *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

As explained below, the government's recommended sentence—18 months of imprisonment—is sufficient but not greater than necessary to achieve these goals.

**A.    The Recommended Sentence Is Consistent with the Defendant's Sentencing Guidelines Range.**

Section 3553(a) requires the Court to consider the Sentencing Guidelines when sentencing a defendant. *See* § 3553(a)(4). Despite their advisory nature, the guidelines remain "the 'starting point' and 'initial benchmark' for sentencing." *United States v. Davis*, 855 F.3d 587, 595 (4th Cir. 2017) (quoting *Beckles v. United States*, 580 U.S. 256, 265 (2017)). While the guidelines do not constrain the Court's discretion, they nevertheless guide that "discretion by serving as 'the framework for sentencing.'" *Beckles*, 580 U.S at 265 (quoting *Peugh v. United States*, 569 U.S. 530, 542 (2013)).

The Government agrees with the calculation of the defendant's guidelines range in the PSR. The defendant is a criminal history category I. The applicable base-offense level is 18 because the "offense involved a firearm described in 26 U.S.C. § 5845(a)," U.S.S.G. § 2K2.1(a)(5), namely, a machinegun, *see* 26 U.S.C. § 5845(a)(6), (b). The defendant should receive a 3-level reduction for acceptance of responsibility,[4] *see* U.S.S.G. § 3E1.1, bringing his total offense level to 15.

Where, as here, the defendant has an offense level of 15 and a criminal history category I, the Sentencing Guidelines recommend 18 to 24 months of imprisonment. U.S.S.G. ch. 5, pt. A.

---

[4] The defendant timely notified the Government of his intention to plead guilty, thereby assisting authorities in the prosecution of his own misconduct. Accordingly, if the Court determines that the defendant has accepted responsibility so as to earn the two-level reduction in U.S.S.G. § 3E1.1(a), the Government moves the Court to adjust his offense level downward by an additional one level pursuant to § 3E1.1(b).

The government's sentencing recommendation is at the lowest end of that range. As described below, the other § 3553(a) factors support such a sentence.

**B.     The Other § 3553(a) Factors Support the Recommended Sentence.**

The nature and circumstances of the offense warrant a guidelines sentence in this case. Machineguns pose an "immense danger," *United States v. O'Brien*, 560 U.S. 218, 230 (2010), owing to "their destructive potential and exacerbation of serious crime," *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 45 F.4th 306, 316 (D.C. Cir. 2022); *see also United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns."). In recent years, the illegal possession and transfer of machinegun-conversion parts have become a serious and growing problem. *See* Peter Hermann, *D.C. Police See Rise in Devices that Convert Guns into Fully Automatic Weapons*, WASHINGTON POST (Sept. 4, 2021), *available at* https://www.washingtonpost.com/local/public-safety/guns-auto-sears-automatic/2021/09/04/ 0be57914-0020-11ec-ba7e-2cf966e88e93_story.html (last visited Mar. 27, 2023). In the 2017-2021 period, the ATF recovered 5,454 machinegun-conversion parts. *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms Commerce and Trafficking Assessment, Vol. 2: Crime Gun Intelligence and Analysis (Jan. 11, 2023), *available at* https://www.atf.gov/ file/175261/download (last visited Mar. 27, 2023).   That was a 570% increase as compared to the number of machinegun-conversion parts seized in the 2012-2016 period (814 parts). *Id.*

The defendant possessed the machinegun-conversion parts (and an unregistered short-barrel rifle) knowing full well that they were illegal. In fact, consistent with the evidence in this case, the defendant has admitted that he knew it was a *felony* to possess these items. And the defendant made light of the fact that he knew they were illegal, telling E.A. that the AR Rifle

9

was "illegal for 3 reasons lmao [laughing my ass off]." SOF ¶ 9. Despite knowing that it was a serious criminal offense to possess the machinegun-conversion parts and short-barrel rifle, the defendant possessed them anyway, in flagrant disregard for the law.

A further aggravating circumstance in this case is that the defendant not only possessed the illegal machinegun-conversion parts, but he also transferred and attempted to sell one or more of them. As described above, he transferred one of the machinegun-conversion parts to K.T. for a period of time. And he attempted to sell his AR Rifle as a short-barrel rifle with a machinegun-conversion part, knowing that they were illegal. In other words, the defendant sought to contribute directly to the growing and dangerous proliferation of these illegal machinegun-conversion parts. By doing so, the defendant demonstrated an indifference to the dangers that fully automatic weapons can pose to human life. There is no telling in whose hands this dangerous weaponry could have ended up.

Under these circumstances, a term of imprisonment is appropriate "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). A term of imprisonment is especially appropriate "to afford adequate deterrence to criminal conduct." *Id.* § 3553(a)(2)(B). In light of the staggering rise of these illegal machinegun-conversion parts over the last decade and the threat that they pose to human life, the Court's sentence should send a message that the illegal possession of these items will warrant a serious sanction. A guidelines sentence in this case will ensure that the public understands that the illegal possession of these items will not be treated as an insignificant infraction.

Yet, at the same time, the government recognizes that there are mitigating circumstances favoring a sentence at the lowest end of the guidelines range in this case. The defendant

10

accepted responsibility early in the case. When his home was searched in May 2022, the defendant agreed to a voluntary interview with law enforcement. *See* Aff. ¶¶ 22-25, 43, 56, 63 (describing incriminating statements that the defendant made). After he was charged, the defendant waived indictment and pleaded guilty to the charged offense. The defendant's statement accepting responsibility in the PSR is direct and unequivocal. *See* PSR ¶ 63 (Mar. 28, 2023) (Dkt. No. 31).

The evidence, moreover, suggests that the defendant has moved past influences that played a role in this offense. There was evidence suggesting that the defendant was involved in the "Boogaloo Bois" movement around the time that he purchased the machinegun-conversion parts. The "boogaloo" concept has been used by some domestic violent extremists, including those who call themselves "Boogaloo Bois," to reference an impending politically-motivated civil war, uprising against the government following perceived incursions on constitutional rights—including the Second Amendment—or other perceived government overreach. The "boogaloo" is not a single cohesive group, but rather a loose concept arising from internet platforms which has become a rallying point for some violent extremists. The specific ideology of those involved in the "Boogaloo Bois" varies, and views on topics such as race differ widely. But the movement is generally pro-gun and anti-government.

The defendant's Boogaloo Bois involvement appears to have influenced his acquisition of the machinegun-conversion parts. The Facebook account that he used to purchase the machinegun-conversion parts displayed Boogaloo Bois imagery, and on at least one occasion, he posted about machinegun-conversion parts on a Boogaloo Bois social media group, *see* PSR ¶ 31; Aff. ¶ 33. In his interview with FBI agents, he stated that he obtained a picture of a

11

machinegun-conversion part from a Boogaloo Bois group, which he used to determine how to fashion the machinegun-conversion part from a coat hanger.

To the defendant's credit, he appears to have outgrown those influences prior to his arrest. During his pre-arrest interview with the FBI, the defendant lamented that his Boogaloo Bois activity "was a phase" and "stupid." He stated that he had "closed . . . that chapter of [his] life." Looking back on that time, he stated that he "came into [his] rebellious years a . . . few years too late." In this respect, the defendant's statements were consistent with the evidence obtained over the course of the investigation, which included searches of the defendant's Facebook accounts, Apple account, and residence and electronics, *see* Aff. ¶¶ 32, 50, 58, 64. The defendant should be commended for moving past such influences.

In light of this evidence, the history and characteristics of the defendant militate in favor of a sentence at the lowest end of the guidelines range. The defendant does not appear to be a threat to the public. Given his lack of criminal history and the other circumstances described above, a more substantial sentence does not appear necessary to "protect the public from further crimes of the defendant." § 3553(a)(2)(C).

## CONCLUSION

For the foregoing reasons, the Court should sentence the defendant to a term of imprisonment of 18 months.

                Respectfully submitted,

                Jessica D. Aber
                United States Attorney

By:       _____/s/_____
                Thomas W. Traxler
                Assistant United States Attorney
                United States Attorney's Office
                2100 Jamieson Avenue
                Alexandria, VA 22314
                Telephone (703) 299-3746
                Facsimile (703) 299-3980
                Thomas.traxler@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of March, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

_____/s/_____
Thomas W. Traxler
Assistant United States Attorney